UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JONNATHAN ROMERO MARENTES,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY et al.,

Respondents.

No. 1:26-cv-00247-TLN-EFB

**ORDER**

This matter is before the Court on Petitioner Jonnathan Romero Marentes ("Petitioner") Motion for a Temporary Restraining Order[1] ("TRO"). (ECF No. 1.)  Respondents filed an opposition.  (ECF No. 4.)  In Respondents' opposition, Respondents waive oral argument and do not oppose the Court considering Petitioner's request as a motion for a preliminary injunction. (*Id.*)  Given this, and because the standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction,[2] the Court considers whether a preliminary

---

[1]     On January 12, 2026, Petitioner filed a pro se Petition for Writ of Habeas Corpus.  (ECF No. 1.)  Based on the substance of the petition and the relief requested therein, the Court liberally construed the petition as a motion for a TRO.  (ECF No. 3.)  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2]     *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

1

injunction should issue.  For the reasons set forth below, the Court issues a preliminary injunction.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was born in Colombia and entered the United States on May 17, 2022.  (ECF No. 1 at 5.)  Petitioner was paroled into the United States on May 18, 2022.  (*Id.*)  Petitioner states he has a house, a job, and married a U.S. citizen in July 2024.  (*Id.*)  Petitioner further states he is a refugee and has a pending immigration case.  (*Id.*)  Petitioner was detained and taken into U.S. Immigration and Customs Enforcement ("ICE") on September 27, 2025.  (*Id.*)

On January 12, 2026, Petitioner filed a petition for writ of habeas corpus.  (ECF No. 1.)  Based on the substance of the petition and the relief requested therein, the Court construed the petition as a motion for a TRO and now issues the following preliminary injunction.  (ECF No. 3.)

## II.      STANDARD OF LAW

For a preliminary injunction, courts consider whether a petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor to issue the requested preliminary injunction.  *Id.* at 1134–35.

///

### III.   ANALYSIS

#### A.   Likelihood of Success on the Merits

Petitioner seeks release arguing his detention is unlawful under the Fifth Amendment Due Process Clause.  (*See generally* ECF No. 1.)  Respondents oppose arguing Petitioner is an applicant for admission, he is subject to detention under 8 U.S.C. § 1225(b)(2)(A), and he has no right to a pre-deprivation hearing.  (ECF No. 4 at 2.)  The Court disagrees and based on the record before it, finds Petitioner has established a likelihood of success on his due process claim.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

As for the first step, the Court finds Petitioner has raised serious questions as to whether he has a protectable liberty interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482)

(modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court finds Petitioner developed "enduring attachments of normal life" during his conditional release as described in *Morrisey*, 408 U.S. at 482. Prior to re-detention, Petitioner lived in the United States for approximately three years. (ECF No. 1 at 5.) During that time, Petitioner states he held a job, had a house, and married his wife – a U.S. citizen. (*Id.*) Respondents do not contend Petitioner failed to comply with his release conditions nor that he engaged in any criminal activity. (*See generally* ECF No. 4.) For these reasons, the Court finds Petitioner's prior release from immigration custody creates a substantial liberty interest protected by the Fifth Amendment. *See Salcedo Aceros*, 2025 WL 2637503, at *6 ("Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody.").

Respondents' argument that Petitioner is subject to mandatory detention under § 1225(b)(2) does not change this Court's analysis in determining Petitioner's likelihood of success on his due process claim. (*See* ECF No. 4 at 2.) As this Court and many other courts in this district have found, protected liberty interests arise from an official's discretionary decision to release a noncitizen on parole. *See, e.g.*, *Bekler v. Noem*, No. 1:25-CV-1961-JDP, 2026 WL 25508, at *2 (E.D. Cal. Jan. 5, 2026) (collecting cases and finding liberty interest where petitioner was paroled into the United States).

Having found Petitioner is likely to succeed in establishing he had a liberty interest in his continued release, the Court turns to the second step in the procedural due process analysis – what procedures or process is due. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest

4

through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention.  As discussed above, Petitioner has lived in the United States for the past three years and has built a life outside of detention.  He has a job, a house, and married a U.S. citizen in July 2024.  (ECF No. 1 at 5.)  Despite that, Petitioner has now been detained since September 27, 2025, without being afforded a hearing.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing.  "Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community."  *R.D.T.M.*, 2025 WL 2617255, at *4 (internal quotation and citation omitted).  The Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest.  Moreover, without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  *Id.*

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Indeed, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his pending immigration proceedings than to continue to detain him.  *See Hernandez*, 872 F.3d at 996 (noting that in 2017, the costs to the public of immigration detention amounted to a total daily cost of $6.5 million).

On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due process – a hearing to determine whether his detention was warranted.  Accordingly, with respect

to his due process claim, Petitioner has shown he is likely to succeed on the merits.

### B.   Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Petitioner has been detained since September 27, 2025, has health problems, and has been separated from his wife whom he states needs his support. (ECF No. 1 at 5–6.) Even if this was not sufficient to establish irreparable harm, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### C.   Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds there is no equitable reason that would tip the balance in the Government's favor, because the Government faces no hardship. First, it is clear on this record that the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted). In sum, these last two factors also weigh in Petitioner's favor.

Accordingly, the Court orders Petitioner's immediate release on the same terms as he was

released prior to his detention[3] and issues a preliminary injunction as set forth below.

**IV.   CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Jonnathan Romero Marentes from custody under the same conditions as he was released prior to his current detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing. **Respondents must file a notice certifying compliance with this provision of the Court's Order by Tuesday, January 20, 2026, at 12:00pm**.

2. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

3. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011);

4. This matter if referred to the United States Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Date: January 16, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

---

[3]   *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").